Charles B. HOLLAND and Manufacturers & Traders Trust Company, as Executors of the Last Will and Testament of Charles J. Holland Moritz, Deceased, Plaintiffs,

v.

George T. McGOWAN, Collector of Internal Revenue, Defendant,

and

United States of America, Intervenor.

Civ. No. 4435.

United States District Court
W. D. New York.
July 9, 1956.

Robert R. Barrett, Donald C. Lubick, Buffalo, N. Y., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., of counsel, for plaintiffs.

John O. Henderson, U. S. Atty. for Western District of New York, Buffalo, N. Y., H. Brian Holland, Asst. Atty. Gen., Washington, D. C., of counsel, for defendant.

MORGAN, District Judge.

This action was commenced by Charles B. Holland and the Manufacturers & Traders Trust Company, as executors under the last will and testament of Charles J. Holland Moritz to recover an alleged overpayment of gift taxes paid by Charles J. Holland Moritz for the year 1941. As against any recovery by the plaintiffs, the United States, as intervenor, seeks to set off $16,286.50 plus interest as additional estate taxes of Charles J. Holland Moritz, who died on June 27, 1948.

The facts in this litigation have been stipulated as follows:

On January 4, 1941, Charles J. Holland Moritz, hereinafter referred to as the decedent, and Leonore Bampfield Holland Moritz, his wife, entered into a separation agreement which required that the decedent transfer certain properties and securities valued at $232,000 to the Power City Trust Company of Niagara Falls, New York, in trust, so as to discharge his obligation to support and maintain his wife. On January 26, 1942, decedent filed his Federal gift tax return for the calendar year 1941 with the Collector of Internal Revenue for the 28th Collection District of New York, reporting a gift tax due of $30,537.38, which he paid to the defendant as such Collector of Internal Revenue. The gift tax return for 1941 did not include the transfer of the trust property since the decedent considered the transfer to be one for an adequate and full consideration in money or money's worth. In the latter part of 1944, the Internal Revenue Agent in Buffalo prepared a final adjustment in the 1941 gift tax liability of the decedent in the amount of $40,-360.85 plus statutory interest on the theory that the transfer of the property in trust was a taxable gift.

On Saturday, December 23, 1944, at approximately 4:00 P.M., the agent of the decedent personally delivered to Anna M. Maher, the chief of the account section of the Miscellaneous Tax Division, at the office of the defendant, three items: decedent's letter dated December 23, 1944, protesting the additional assessment; decedent's check payable to the order of the defendant for $47,095.03, and Treasury Form 890–A, Waiver of Restrictions Against Immediate Assessment and Collection of Tax, executed by the decedent. Whereupon, Miss Maher prepared Treasury Department Form 880, Notice and Demand for Gift Tax dated December 23, 1944, and stated that because the office of the defendant was about to close, she would deliver the check of the decedent to the cashier at the office of the defendant on the next working day, Tuesday, December 26, 1944, and that the Treasury Department Form 880 with the stamped receipt of the defendant would be thereafter returned to Mr. Weppner, the agent of the decedent. The office of the defendant closed at 4:30 P.M. on that day. The cashier of the defendant stamped form 880 with the legend "Paid December 26, 1944 George T. McGowan, Collector." The assessment of the gift tax against the decedent was listed on the said assessment list on December 26, 1944, and

158

was certified by the Commissioner of Internal Revenue on January 29, 1945.

Subsequently, on December 24, 1947, the decedent filed with the defendant Treasury Department Form 843, claim for refund of 1941 Gift Tax and assessed statutory interest in the amount of $47,-095.03. On January 16, 1948, the Commissioner of Internal Revenue disallowed the claim for refund in its entirety on the ground that "the statute of limitation with respect to the refund of all or any portion of the gift tax deficiency and interest paid had expired."

After this action was commenced, the parties hereto agreed that the value of the support rights relinquished by the decedent's wife, Leonore B. Holland Moritz, pursuant to the separation agreement, was in the sum of $149,643.84 and to that extent the support rights so relinquished represented an adequate and full consideration in money or money's worth. Therefore, the value of the securities transferred in 1941, to wit $232,000, should be reduced by the above amount, namely $149,643.84. Decedent made an overpayment of his gift tax and interest for the calendar year 1941 in the total amount of $31,238.99, which the Commissioner refused to refund because of his determination that a timely claim for refund had not been filed.

Section 1027(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1027(b), provides: "Period of limitation. No such credit or refund should be allowed or made after three years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer."

██ On December 23, 1944, the taxpayer, Charles J. Holland Moritz, was under no obligation to pay the additional gift tax in the sum of $47,095.03 for the year 1941, since the deficiency assessment against him did not come into existence until certification of the assessment list by the Commissioner on January 29, 1945. The waiver of restrictions against immediate assessment and collection of the tax executed by the taxpayer on De-

cember 23, 1944, waived the 90 day notice, but it did not bring the alleged deficiency into existence.

Consequently, there was nothing for the taxpayer to pay on December 23, 1944. The payment of $47,095.03 was an advance payment to cover additional tax liability of the gift tax for the year 1941, as computed by the Internal Revenue agents.

In the wording of the column entitled "Remarks" of the deficiency tax assessment list, page 290 in Exhibit "E" attached to the stipulation of facts herein, appear these significant words:

> "Calendar Year 1941
> Int FR 3–15–42 to
> 12–23–44 PD 12–23–44
> Waiver Recd 12–23–44."

The date of Exhibit "E" is December 26, 1944 and the Government's counsel bases his opposition to the plaintiffs' claim for refund on the ground that the claim for refund was filed more than three years after the tax was paid on December 23, 1944. The date of the assessment list deficiency tax on December 26, 1944, negates this argument, particularly since the stipulation of facts also contains the language of paragraphs 19 and 20, "As a courtesy to taxpayers in order to save them and their representatives the necessity of a trip to the cashier's window to make a tax payment, in 1944 employees in the Miscellaneous Tax Division of the office of the defendant would frequently accept checks of taxpayers in gift tax deficiency cases and deliver them with Treasury Department Form 880, Notice and Demand for Gift Tax, to the cashier's window at the office of the defendant, having the cashier receipt the Form 880 with the Collector's Paid Stamp and return the stamped Form 880 to the taxpayer as a validated receipt. Such practice was known to the defendant but had never been formally authorized by him. Employees in the Miscellaneous Tax Division were not otherwise authorized to receive money on behalf of the defendant and were not

authorized to validate receipts for the payment of taxes on behalf of the defendant."

"Miss Maher was not authorized to issue a validated receipt on behalf of the defendant for the payment of taxes under the circumstances described in paragraph 6 hereof. The only persons in the office of the defendant authorized to issue such a validated receipt were the cashier and those persons employed under the cashier's supervision. Such a validated receipt was issued on behalf of the defendant by affixing the Collector's Paid Stamp to a Treasury Department Form 880 in the box provided on said form for such stamp. The Collector's Paid Stamp was affixed by means of a stamping machine in the cashier's office which recorded the date it was affixed in the manner illustrated in Exhibit D hereof." This clearly indicates to this Court that Miss Maher was merely exercising a courtesy on December 23, 1944 and that the official assessment did not show receipt by the cashier until December 26, 1944. The fact that Miss Maher was an employee of the Internal Revenue office does not place the Government in any better position than as if she were an agent of the plaintiffs who held the check in the amount of the protested assessment over the holiday weekend until the official agent of the Government, the cashier, was present on December 26, 1944.

There is no doubt in the mind of this Court that under the law and the stipulation of facts, paragraphs 12 and 14, the plaintiffs are entitled to a refund of gift taxes and interest for the calendar year 1941 in the amount of $37,819.-72 (representing the overpayment of $31,238.99 described in paragraph 12, plus statutory interest thereon of $6,-580.73, from the date of such overpayment to the date of the death of the decedent, which was June 27, 1948). Thomas v. Mercantile National Bank at Dallas, 5 Cir., 204 F.2d 943; Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535; Dubuque Packing Co. v. United States, D.C., 126 F.Supp. 796.

Moreover, under established case law Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, and the content of paragraphs 15 and 16 of the stipulation of facts, the inclusion in the gross estate of the decedent for Federal estate tax purposes of said sum of $37,819.72, imposes an additional Federal estate tax on the estate of the decedent's assets with respect to said estate by $16,286.50, together with interest thereon as provided by law from September 27, 1949, to date of payment thereof, and plaintiffs are entitled to a judgment for the difference, without costs to either party.

Settle order on notice.