INTERNATIONAL BEDAUX CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21656. Promulgated October 8, 1951.

*George Link, Jr., Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

614

616

OPINION.

BLACK, *Judge:* In computing petitioner's undistributed subchapter A net income for the year 1942, respondent disallowed the entire dividends paid credit claimed by petitioner in the amount of $39,200, and he still contends that his disallowance of the entire amount was correct.

Petitioner, on the other hand, contends that it is entitled to a dividends paid credit of the entire amount of $39,200 which it claimed on its personal holding company return. The basis of this contention is that constructive payment of this amount of dividends was made by petitioner on December 31, 1942, by unconditionally crediting to the account of its stockholder, Fern L. Bedaux, $35,280 and by unconditionally crediting to its other stockholder, Charles E. Bedaux, on the same date, $3,920. Petitioner further points out that each of the stockholders reported on his income tax return for 1942 the full amount of the dividends thus credited as having been received in 1942, and paid tax thereon. Petitioner contends in the alternative that if it be held that it did not constructively pay to its two stockholders $39,200 dividends in 1942, that, nevertheless, it actually paid dividends in that year of $28,400 to its two stockholders of record and that it is entitled to a dividends paid credit of at least that amount in 1942.

The basis of this latter contention is that on December 31, 1942, petitioner issued its check for $25,560 as a dividend on the stock owned by Fern and its check for $2,840 as a dividend on the stock owned by Charles, and that petitioner delivered these two checks to Isabella C. Waite, the duly appointed agent of the two stockholders, for deposit in the Chase National Bank for the account of each of the stockholders. Petitioner contends that the delivery of those two checks to Isabella C. Waite, as agent of the stockholders, was payment to them of the dividends in 1942, although the checks were not actually deposited to the accounts of the two stockholders in the Chase National Bank until January 2, 1943.

Petitioner, a personal holding company, in the computation of its undistributed subchapter A net income, section 504 (a) of the Code, is entitled to a credit for *dividends paid during the taxable year*, section 27 (b) (1) of the Code, which reads as follows:

SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

\*          \*          \*          \*          \*          \*          \*

(b) BASIC SURTAX CREDIT.—As used in this chapter the term "basic surtax credit" means the sum of:

(1) The dividends paid during the taxable year, increased by the consent dividends credit provided in section 28, and reduced by the amount of the credit provided in section 26 (a), \* \* \*

In regard to the time and manner of dividend payments it is provided in Treasury Regulations 111 at section 29.27 (b)–2 that:

\* \* \* A dividend will be considered as paid when it is received by the shareholder. An allowance for dividends paid will not be permitted unless the shareholder receives the dividend during the taxable year for which the credit is claimed.

If a dividend is paid by check and the check bearing a date within the taxable year is deposited in the mails, in a cover properly stamped and addressed to the shareholder at his last known address, at such time that in the ordinary handling of the mails the check would be received by the shareholder within the taxable year, a presumption arises that the dividend was paid to the shareholder in such year.

The payment of a dividend during the taxable year to the authorized agent of the shareholder will be deemed payment of the dividend to the shareholder during such year.

If a corporation, instead of paying the dividend directly to the shareholder, credits the account of the shareholder on the books of the corporation with the amount of the dividend, the allowance for a dividend paid will not be permitted unless it be shown to the satisfaction of the Commissioner that such crediting constituted payment of the dividend to the shareholder within the taxable year.

It will be noted that the last paragraph of the foregoing regulation provides for constructive payment of the dividend by a credit to the stockholder. The Commissioner has determined that constructive payment to the stockholders of $39,200 was not made to them in 1942, within the meaning of the regulation. We doubt if petitioner's evi-

dence on this point is sufficient to overcome the presumptive correctness of respondent's determination.

Our Findings of Fact show that on December 31, 1942, petitioner issued checks in payment of the dividends to the two stockholders which aggregated $28,400 and delivered them to Mrs. Waite, who was agent and representative of the stockholders. Mrs. Waite was the only witness who testified at the hearing and in her testimony she explained why checks were not issued for the full amount of the dividends, namely, $39,200. She explained this matter in her testimony when speaking of the checks which were issued on December 31, 1942, as follows:

I believe it was $28,200.00 in the case of Mrs. Bedaux—substantially that amount—and $2,920 in the case of Mr. Bedaux. It was in equal proportions to the stock ownership, for as much as we could pay out without leaving International without any funds whatsoever.

It will be noted that Mrs. Waite's recollection as to the amounts of these checks is not accurate. However, for the purposes of this discussion, that inaccuracy is not material. The amounts of these two checks are correctly stated in our Findings of Fact. In the face of this testimony by Mrs. Waite, we would be unable to find that petitioner made constructive payment of $39,200 dividends in 1942 within the meaning of section 29.27 (b)-2 of Treasury Regulations 111, quoted above. Cf. *Husted Co.*, 43 B. T. A. 446. The mere making of bookkeeping entries does not constitute payments, but under certain circumstances they may constitute payment. We do not think that the facts and circumstances proved in the instant case show constructive payment. We hold against petitioner on that particular issue.

It will be noted, however, that a paragraph in this same regulation reads: "The payment of a dividend during the taxable year to the authorized agent of the shareholder will be deemed payment of the dividend to the shareholder during such year." We think that the facts show that this part of the regulation has been complied with to the extent of $28,400. Petitioner on December 30, 1942, made application to the Treasury Department to pay dividends from the blocked account of petitioner in the sum of $39,200. On December 31, 1942, permission was granted by the Treasury Department to pay dividends aggregating $39,200. However, for reasons stated by Mrs. Waite in her testimony, checks were not issued for the full amount of $39,200. A check for $25,560 was issued as part payment of the dividend on the shares of stock owned by Fern, and a check for $2,840 was issued as part payment of the dividend on the shares of stock owned by Charles. Both of these checks were delivered to Isabella Waite as the agent for the Bedauxs. She was unquestionably their lawful agent with full power to receive these checks on their behalf, and we think that she did so on December 31, 1942. Immediately after receiving them she

mailed them to the Chase National Bank in New York City for deposit to the credit of the accounts of the two stockholders. The mere fact that these two checks were not received and credited by the Chase National Bank until January 2, 1943, to the blocked accounts of the two stockholders does not mean that the dividends in the respective amounts of $25,560 and $2,840 had not been paid to the two stockholders in 1942. Cf. *Estate of Modie J. Spiegel*, 12 T. C. 524, and *Estelle Broussard*, 16 T. C. 23.

It should be remembered that we do not have the question here as to when the dividends were received by the stockholders, although the evidence shows that they reported the dividends as having been received in 1942, and paid income taxes thereon. Our question here is when petitioner paid the dividends aggregating $28,400. It unquestionably issued its checks in that amount on December 31, 1942, and delivered them to the agent of the two stockholders, with no strings attached. That we think constituted payment. In the *Broussard* case, *supra*, we said:

\* \* \* When the Rice Mills checks were delivered by C. E. Broussard to Sister Mary Rita Estelle in her capacity as a Sister of the Holy Cross, delivery to that Order occurred. Such seems plainly to have been the intention of the parties and there is no valid reason so far as we can see why their intention should not be given its legal effect. When this is done, we think a payment of the $6,000 in question to the Sisters of the Holy Cross took place on December 31, 1946.

When this same logic is applied to the facts which we have here, we think it can be said that when petitioner's two dividend checks aggregating $28,400 were delivered to Isabella C. Waite as the authorized agent of petitioner's two stockholders, delivery to the two stockholders occurred. Such seems plainly to have been the intention of the parties and there is no valid reason so far as we can see why that intention should not be given its legal effect. When this is done, we think a payment of the $28,400 in question to the two stockholders took place on December 31, 1942, and we so hold. We do not think it is material that the two checks were not actually deposited to the accounts of the two stockholders until January 2, 1943.

*Decision will be entered under Rule 50.*